ROBERT P. SMITH, Jr., Chief Judge,
dissenting.
We are concerned here with an order of the Department of Corrections denying appellant Ajax section 120.57 proceedings on a disputed agency decision to award a contract to Dyson, another bidder. The Department found that Ajax did not protest the agency’s proposed decision and request APA processes at the time and in the manner required by section 120.53(5), Florida Statutes (1981) — in other words, that Ajax did not take advantage of the “clear point of entry” to APA processes afforded by the controlling statute. I agree with the Department and so dissent from the Court’s decision.
Liberality in affording APA proceedings on protests aimed at proposed agency action is ordinarily to be commended, but in the context of disputes arising from the bidding of public works and purchases, orderliness and predictability of consequences are equally to be valued. Three distinct interests are in competition when a contracting agency announces its award: the low bidder wants to sign a contract and begin work; his bidding competitors want to prevent that and to have their protests heard and sustained by the agency; and the agency wants to proceed as rapidly as possible in compliance with the law, so to preserve the work and the winning bid (no matter whose bid it is) against loss by delay and litigation. Successfully protecting all three competing interests depends on holding them in a delicate balance; too heavy a hand laid on in support of one of those interests, even so worthy an interest as being heard in section 120.57 proceedings, inevitably harms other important values.
We have repeatedly called upon agencies to provide in their free-form exchanges with affected parties a “clear point of entry” to APA processes. This, we have said, is a necessary prerequisite for any later agency decision denying a party APA remedies on the ground that they were not timely requested. E.g., Capeletti Bros., Inc. v. State Department of Transportation, 362 So.2d 346, 348 (Fla. 1st DCA 1978), cert. den., 368 So.2d 1374 (Fla.1979); Bio-Medical Applications of Ocala, Inc. v. Office of Community Medical Facilities, 374 So.2d 88 (Fla. 1st DCA 1979); United States Service Industries-Florida v. State Department of Health and Rehabilitative Services, 385 So.2d 1147, 1148-49 (Fla. 1st DCA 1980). Responding to that call in this most needful context of the contract bidding process, the 1981 Legislature provided in section 120.-53(5) minimum standards for agency rules providing a clear point of entry to losing bidders who wish to pursue their disputes of the announced award in section 120.57 proceedings. Though the statute is not in all respects a model of clarity, it is clear in requiring that a disappointed bidder file his protest of the agency’s announced decision within a certain number of hours and days after the decision is announced in one of two particular ways.
In this rather simple case, Ajax “protested” by free-form communications, its telegram of January 14 and its letter of January 19, 1982, that Dyson’s bid opened December 22 “did not list subcontractors as required by bid documents.” But Ajax did not timely protest or request APA proceedings on the Department’s announced decision of January 21 to award the work to Dyson. Therefore section 120.53(5) foreclosed section 120.57 proceedings on Ajax’s grievance and let stand the Department’s award of January 21. The Department so held, having no motive but to apply section 120.53(5) correctly and to conclude a contract with one bidder or the other as soon as possible. Reversing, the Court declares that Ajax’s telegram and letter protests of January 14 and 19, aimed at Dyson’s bid opened December 22, stood over as a protest of the Department’s decision announced January 21. The Court’s decision, though *782 well-intended to protect Ajax’s interest in having a hearing, is not and in my opinion cannot be explicated in the terms of the statute. The statute is thus bent to the Court’s will in order to achieve what is considered to be a just result. In this I apprehend that the Court entirely upsets the system of balanced interests that the statute sought to preserve, and creates abundant new opportunities for delay, confusion, and litigation in an area that can scarce afford new complexity.
The Court’s analogy to Williams v. State, 324 So.2d 74 (Fla.1975), a criminal appeal held timely when filed after signing of the judgment and sentencing, but before the judgment was recorded and thus “rendered,” is in my opinion untenable; that case involved different interests, a rule of different purposes, and quite different facts.
Chapter 81 — 296, Laws of Florida, added subsection 120.53(5) to require agency rules governing “resolution of protests arising from the contract bidding process” and specifying minimum rule requirements in relevant part as follows:
(a) The agency shall provide notice of its decision or intended decision concerning ... a contract award ... by posting the bid tabulation at the location where the bids were opened or by certified United States mail, return receipt requested. The notice required by this paragraph shall contain the following statement: “Failure to file a protest within the time prescribed in s. 120.53(5), Florida Statutes, shall constitute a waiver of proceedings under chapter 120, Florida Statutes.”
(b) Any person who is affected adversely by the agency decision or intended decision shall file with the agency a notice of protest in writing within 72 hours after the posting of the bid tabulation or after receipt of the notice of the agency decision or intended decision and shall file a formal written protest within 10 days after the date he filed the notice of protest. Failure to file a notice of protest or failure to file a formal written protest shall constitute a waiver of proceedings under chapter 120.
(c) Upon receipt of a notice of protest which has been timely filed, the agency shall stop the . . . contract award process until the subject of the protest is resolved by final agency action [unless the agency makes emergency findings] ....
(d) [Provides section 120.57(1) or (2) proceedings after a 14-day opportunity for “mutual agreement between the parties”]
By this statute the clear point of entry for a timely protest of proposed agency action awarding a public contract is a designated window in time immediately following the agency’s giving of “notice of its decision or intended decision” either by “posting the bid tabulation at the location where the bids were opened” or by “certified United States mail, return receipt requested.” The statute even specifies that the critical “notice required by this paragraph” be self-identifying as an APA-significant event occurring in the midst of free-form proceedings: it requires that the notice state, in words prescribed by the statute itself, that “Failure to file a protest within the time prescribed in s. 120.53(5)” shall forfeit the right to APA proceedings. The Department’s notice to all bidders dated January 21, 1982, and mailed certified mail, return receipt requested, followed the statute to the letter and included the prescribed warning statement, preceded by the words: “The Administrative Procedure Act requires this notice contain the following statement.”
Because section 120.53(5) designates the giving of this notice of intended decision as beginning the brief period in which affected parties must invoke APA processes or be held to have waived them, by definition no other period so qualifies. Because demands made in that period are significant only because they were made in that period, the integrity of the period must be respected if significant demands are to be reliably distinguished from earlier or later demands which are insignificant though of like tenor.
By definition, therefore, all pre-January 21 dealings between the Department, Ajax, *783 Dyson, and the other bidders were free-form only, “the necessary or convenient procedures, unknown to the APA, by which an agency transacts its day-to-day business.” Capeletti, supra, 362 So.2d at 348. In the specific terms of this case this means that the statutory clear point of entry, the time when APA processes must have been invoked if at all, did not occur with the opening of bids,[1] nor with the appearance to the Department or to Ajax of some irregularity in Dyson’s bid, nor with Ajax’s telegram or letter of protest to the Department concerning that bid, nor with any other agency utterance, written or oral, on the subject of that bid. All that, while no doubt of great significance in the agency’s formulation of its intended decision announced January 21,1982, was of no significance whatever for purposes of invoking APA processes. Had no clear point of entry been provided by statute or by rule, we no doubt would properly require the Department to honor Ajax’s protest and invoking of APA processes, however and whenever made. We did so in Capeletti, United States Service Industries, Bio-Medical Applications, and other cases. But section 120.53(5), by providing a clear point of entry beginning upon the agency’s notice of its intended decision on January 21, 1982, reduced all antecedent claims, demands, protests, explanations, and other communications of every sort to the level of insignificance we described in Graham Contraet-ing, Inc. v. Department of General Services, 363 So.2d 810, 814-15 (Fla. 1st DCA 1978), cert., den., 373 So.2d 457 (Fla.1979):
[W]e have only a batch of correspondence by which Graham contends and the Department denies that there are disputed factual issues. These free-form proceedings may end the controversy if they are accepted as ending the controversy, but not if a substantially affected party timely invokes Section 120.57(1) or (2) remedies.
By the terms of section 120 53(5), Ajax’s telegram of January 14 and its letter of January 19 had no more APA-significance than the “batch of correspondence” between Graham and the Department of General Services in the cited case.
I know of no reason why we should not respect the legislature’s specification of this clear point of entry for filing protests and invoking APA processes on contract awards disputes. We have repeatedly called for agencies to exercise their “power to regulate the time and manner in which competitor applicants must appear and request a hearing on each other’s applications.” Bio-Medical Applications, supra, 374 So.2d at 89. We have recognized that particularly in contract awards disputes there are critical time periods and “competing interests [that] must be balanced.” United States Service Industries, supra, 385 So.2d at 1148:
*784 [W]hile a party substantially affected by agency action is entitled to review of that action, so, too, are the citizens of the state entitled to continuity and prevention of undue delay in government contract work ....
The legislature has undoubted power to specify minimum standards for the needed clear point of entry, so vital for orderliness, predictability, “continuity and prevention of undue delay in government contract work.” The Supreme Court, even while professing that other arrangements might have been “more logically provided” by the legislature, respected a statute such as we are concerned with here, rebuffed an applicant’s contention that “it should be permitted to request a hearing after learning that there are disputed issues of fact,” and gave effect to the statutory designation of another event as marking the clear point of entry. Peoples Bank of Indian River County v. State Department of Banking and Finance, 395 So.2d 521, 523 (Fla.1981):
The statutory language gives plain notice that an applicant or any party wishing to challenge the application must either request a hearing within twenty-one days or waive any right to a hearing.
Blurring the statutory clear point of entry is the consequence of treating Ajax’s January 14 telegram and its January 19 letter as constituting, respectively, “a notice of protest in writing within 72 hours . . . after receipt of the notice of the agency decision or intended decision and ... a formal written protest within 10 days after the date he filed the notice of protest.” Section 120.53(5)(b). Subsection (c) of the statute, which as written had clear meaning, now becomes problematic:
Upon receipt of a notice of protest which has been timely filed, the agency shall stop the . . . contract award process until the subject of the protest is resolved by final agency action ....
I assume the Court does not intend that the Department “stop the . . . contract award process” immediately upon the filing of a pre-decision protest of bid such as Ajax’s telegram of January 14; if such telegrams are held to stop the contract award process when filed, no “agency decision or intended decision” could have been announced on January 21, or for many days afterward. In that event the clear point of entry specified by the statute would never occur. Presumably the Court intends instead that the agency proceed to announce its “decision or intended decision,” and then subject to APA processes every timely protest filed thereafter and every antecedent protest of bid that is considered worthy of standing over to satisfy the statute.
In this qualifying of certain free-form bid protests as significant action satisfying section 120.53(5), the Court opens a door that will be hard to shut. A cautious agency will wonder what kinds of antecedent free-form demands or protests by parties should be regarded as engaging APA processes at the moment of the agency’s notice of intended decision. Since the only distinguishing features of protests satisfying the statute have now been eliminated — protests before the announced decision are as good as protests within 72 hours afterwards, and protests addressed to a bid are as good as protests addressed to the announced decision — contracting agencies have good cause for concern about identifying correctly the kinds of free-form protests that qualify for standing over. The Court describes Ajax’s letter of January 19 as a “formal” letter of protest. It was indeed sent by Ajax’s lawyer to the Department by certified mail, return receipt requested. Are only “formal” free-form protests qualified to stand over, and if so what formalities must be observed?
I apprehend that the Court has overlooked or has underestimated the one sure result of blurring the statutory clear point of entry: contracting agencies will have to make harder and more slippery decisions in the contract awards process, and we shall have more appeals both when the agency recognizes an antecedent protest and when it does not. This does not bode well for “continuity and prevention of undue delay in government contract work.” United States Service Industries, supra. It would *785 be well for agencies to attempt to avoid the effect of this decision in the manner the Court has suggested, by adding to their notices of intended decision the additional warning suggested in the last paragraph of Judge McCord’s opinion. Agencies would also be well advised to write that language in their rules, lest the additional letter warning be vulnerable to attack as illicit rulemaking.
But since I think the statute already hinges the clear point of entry for effective protests on the agency’s notice of its intended decision, I would affirm the Department’s order.

. As noted in the text, the Department satisfied the statute by “providing] notice of its decision or intended decision concerning [the] contract award” through notice “by certified United States mail, return receipt requested.” Section 120.53(5) provides an alternative method of giving that notice of intended decision, which is described as “posting the bid tabulation at the location where the bids were opened.” Obviously this posting must go beyond merely listing the bids and bidders and must in fact announce an intended decision, accompanied by the specified warning statement. We need not consider whether such a posting constitutionally supplies a clear point of entry for protests that must then be lodged within 72 hours, for the Department commendably selected the more generous method of giving notice. But this alternative posting method of giving notice, together with the reference in section 120.53(5)(b) to the filing of “a notice of protect in writing within 72 hours after the posting of the bid tabulation,” may cause the unwary to suppose that the APA-significant protest may or must be filed within 72 hours after the bids are opened and listed, before the agency gives notice of its decision or intended decision. That is not a correct reading of section 120.53(5). While the Department’s nonrule bid manual called for the lodging of bid protests within 72 hours after bid opening, we need not speculate in this case on the effect of a bidder complying with that “protest” requirement but not the requirements of the statute. The bids were opened on December 22, 1981. Ajax, having not timely satisfied the manual’s purported 72-hour requirement with its telegram and letter of January 14 and 19, 1982, cannot rightly claim to have satisfied the manual in the belief it was satisfying the Department’s particular version of section 120.-53(5).